UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANISSA P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 2:19-cv-01993-BAT <br><br> **ORDER REVERSING THE COMMISSIONER AND REMANDING** |

Plaintiff appeals the ALJ's decision finding her not disabled. She contends the ALJ misevaluated the medical evidence, her testimony, and her residual functional capacity. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

BACKGROUND

On August 29, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also protectively filed a Title XVI application for supplemental security income on August 23, 2017. In both applications, Plaintiff alleged disability beginning June 24, 1998. These claims were denied initially on November 12, 2017, and upon reconsideration on February 27, 2018. Thereafter, Plaintiff filed a written request for hearing on April 26, 2018 (20 CFR 404.929 et seq. and 416.1429 et seq.). Plaintiff appeared and

ORDER REVERSING THE COMMISSIONER AND REMANDING - 1

testified at a hearing held on December 4, 2018. Daniel McKinney Sr., a vocational expert, also appeared at the hearing. On January 24, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 15.

Utilizing the five-step disability evaluation process,[1] the ALJ found, at Step One, that Plaintiff had not engaged in substantial gainful activity since June 24, 1998. Tr. 20. At Step Two, the ALJ found that Plaintiff has the following severe impairments: chronic fatigue syndrome; hearing loss; depression; anxiety; and obesity. Tr. 21. At Step Three, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 21-22. The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations, including for example, that she can "understand, remember and carry out simple repetitive tasks in 2-hour increments throughout the 8-hour workday." Tr. 22.

At Step Four the ALJ noted that Plaintiff has no past relevant work. Tr. 26. At Step Five, the ALJ found that because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled. Tr. 26-27.

On October 11, 2019, the Appeals Council denied review and Plaintiff timely filed the complaint in this Court. Tr. 1-6.

## DISCUSSION

A.   Medical Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). In March 2017, the SSA amended its regulations

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING THE COMMISSIONER AND REMANDING - 2

regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The amended regulations provide that when the Commissioner evaluates the persuasiveness of medical opinions and prior administrative medical findings, the most important factors are supportability and consistency. *Id*. While the Commissioner is required to explain how he considered the supportability and consistency factors, the Commissioner may, but is not required to, explain how he considered other factors in determining persuasiveness. 20 C.F.R. § 404.1520c(b)(2)).

1.  Nancy Thordarson, M.D.

Dr. Nancy Thordarson is Plaintiff's treating pediatrician. On April 15, 2018, she opined that Plaintiff met the 2015 IOM diagnostic criteria for chronic fatigue syndrome ("CFS").  Tr. 378. Dr. Thordarson concluded that Plaintiff's daily functioning is "severely impacted by her CFS and her associated medical conditions" and in particular, found that Plaintiff has been unable to sustain any activity for more than one to two hours at a time without debilitating fatigue and prolonged recovery times. *Id*. Dr. Thordarson also stated that Plaintiff has "had little change in her functioning despite years of extensive medical evaluations and medical interventions" and she concluded that "disability benefits for this patient are appropriate and strongly recommended." *Id*.

On April 18, 2018, Dr. Thordarson completed a RFC form in support of Plaintiff's claim for disability benefits. Tr. 776. She opined that Plaintiff would have frequent symptoms severe enough to interfere with the performance of even simple work tasks; that Plaintiff is incapable of performing even "low stress" jobs as she is only capable of sustaining a maximum of one to two

ORDER REVERSING THE COMMISSIONER AND REMANDING - 3

1 hours of physical activity in a single day; Plaintiff could not tolerate eight hours of work, and she
2 would need 48 hours of recovery time after any activity. Tr. 777. Dr. Thordarson further opined
3 that Plaintiff would be absent more than four days per month. Tr. 778.

4       The ALJ accorded minimal weight to Dr. Thordarson's opinions because the ALJ found
5 that her treatment notes are inconsistent with the extreme limitations assigned and Plaintiff's
6 daily activities. Tr. 24.

7       (a)      <u>Inconsistent Treatment Notes</u>

8       The ALJ points to an October 2017 treatment note in which Dr. Thordarson indicated that
9 Plaintiff "was feeling better and able to be more active recently" and had normal adolescent
10 growth and development, and a September 2017, physical examination with "benign results." Tr.
11 24. The ALJ does not explain, however, how these are inconsistent with Dr. Thordarson's
12 opinion that Plaintiff can sustain only one to two hours of activity before experiencing
13 debilitating fatigue. Tr. 780. During the October visit, Dr. Thordarson also noted that Plaintiff's
14 sleep remained irregular, she was "fatigued during the day," and her "activities are limited by
15 fatigue." *Id.* Plaintiff reported she had a "goal of walking to [the] bus stop," which was only a
16 "couple of blocks away". AR 349, 780. Three months earlier, Plaintiff reported she "occasionally
17 has a day with some energy now, but [is] unable to predict day or duration" and continues to
18 have "disabling fatigue after attempts at activity." Tr. 580. Plaintiff does not allege that she is
19 totally disabled every day, but that she has good and bad days. Tr. 218. On good days, she can
20 get dressed, go to the store, or go on a short outing (*id.*), but on bad days, she is too exhausted
21 and will spend those days in bed. Tr. 262. Dr. Thordarson's opinions are also consistent with
22 reports of Plaintiff's ADLs, third-party ADLs (Plaintiff's mother), treatment notes, and
23 testimony at the hearing. Tr. 239; 288; 42.

ORDER REVERSING THE COMMISSIONER AND REMANDING - 4


The ALJ also fails to explain how Plaintiff's "normal adolescent growth and development" and the September 2017 benign physical examination results undermines Dr. Thordarson's medical opinions regarding the symptoms of CFS.

(b)  ADLs

The ALJ also concluded that Plaintiff's activities (babysitting, doing laundry, preparing simple meals, playing video games, watching television shows and YouTube, singing, and reading videos) undermine Dr. Thordarson's opinions regarding the ability of Plaintiff to work. Tr. 24. However, Plaintiff's ADLs, testimony at hearing, and reports cited by the ALJ are consistent with Dr. Thordarson's opinion noting good days, bad days, and long periods of recovery with any exertional activity.

Activities of daily living can support an adverse credibility determination when the subjectively reported limitations are inconsistent with the claimant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Two grounds exist to find that activities suggest the claimant is not credible: (1) the activities contradict the claimant's testimony or (2) the activities are performed in a manner suggesting transferable work skills. *Id*. However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from his credibility as to his overall disability. One does not need to be "utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

The ALJ stated that Plaintiff has been babysitting two children for a family friend about once every three months for *ten hours* each time. Tr. 24 (emphasis added). The parties agree that the ALJ was incorrect as Plaintiff testified that she has been babysitting two children for the past eight years, about once every three months, for about *two hours* on average (the longest being for

four hours). AR 45 (emphasis added). Plaintiff also testified she often declined offers to babysit due to fatigue. Tr. 46.

Defendant concedes that the ALJ erred in finding that Plaintiff babysat for ten hours at a time, but argues that the error was harmless because babysitting for two hours at a time was enough to support the ALJ's finding that Plaintiff is capable of concentrating in two-hour increments. Dkt. 15 at 5. This is an oversimplification of the ALJ's finding. The ALJ stated that the 10 hours of babysitting were "consistent with the RFC limitation of understanding, remembering and carrying out simple repetitive tasks in 2-hour increments, and dealing with simple workplace changes, at the very least." Tr. 24. As correctly noted by Plaintiff, the ALJ's reasoning here makes sense only if she was considering a period longer than two hours, which would have allowed her to analyze Plaintiff's ability to sustain concentration over the course of an entire day. Plaintiff's ability to babysit one day every three months for about two hours does not support a conclusion that she is capable of full-time work. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996) (The Commissioner must consider whether the claimant is unable to work on a "sustained" basis, and a claimant's occasional symptom-free period or the ability to work sporadically is not inconsistent with disability).

In addition, Plaintiff's ability to babysit once every three months for about two hours does not contradict Dr. Thordarson's opinion that Plaintiff could not "regularly perform any job that requires more than a couple hours of mental or physical functioning" or tolerate eight hours of work without needing up to one week to recover from such activity. Tr. 777, 779.

The ALJ also concluded that Plaintiff's ability to do her own laundry, prepare simple meals, play video games, watch television and YouTube videos, and sing and read are additional proof that Plaintiff is not as limited as Dr. Thordarson's opinion that Plaintiff could not sustain

ORDER REVERSING THE COMMISSIONER AND REMANDING - 6

any physical activity for more than one to two hours at a time, lift 10 pounds occasionally, or sit more than two hours in an eight-hour workday. Tr. 24. The record reflects however, that the chores, video games, YouTube videos and reading, which for the most part are sedentary activities, were not performed on a full-time basis and can be performed without lifting any significant weight. *See* Tr. 41, 218-19, 266. Plaintiff reported that activites such as sweeping, picking up her own things, putting dishes away, and doing her laundry were performed less than ten minutes per chore, one to four times per week, all depending on how she felt on any particular day. Tr. 218-219. She also testified that she mostly sleeps during the day but if she has the concentration, she will watch television, YouTube videos, or occasionally play a video game. Tr. 41. She testified that she is able to prepare basic food and do her own laundry if she has "the energy to do it. If I do not, then I cannot." Tr. 42.

The ALJ did not give legally sufficient reasons for rejecting Dr. Thordarson's opinion and her failure to do so is not harmless error as the vocational expert testified that employers will not even tolerate one day of work missed per month or more at unpredictable times. Tr. 61.

(2)    Kavitha Chunchu, MD

In October 2018, new treating physician Dr. Kavitha Chunchu completed a physical RFC assessment in support of Plaintiff's disability claim. Tr. 1009. Dr. Chunchu reported that Plaintiff had diagnoses of chronic fatigue, major depressive disorder, panic attacks and anxiety. *Id*. She opined that Plaintiff's symptoms would constantly interfere with attention and concentration needed to perform even simple work tasks and that she was incapable of performing even a "low stress" job; that Plaintiff would be able to sit more than two hours at a time, at least six hours per day, but would need to sleep in a bed after sitting for some time; and could stand and walk for fifteen minutes at a time for less than two hours total in an eight-hour day. Tr. 1010. *Id*. Dr.

1  Chunchu further opined that Plaintiff is currently not able to work due to fatigue and that she
2  would be absent more than four days per month. Tr. 1012.
3        The ALJ assigned Dr. Chunchu's opinion "some weight only," concluding that the
4  statement was inconsistent with the provider's notes for that contemporaneous period. Tr. 24-25.
5  Specifically, the ALJ noted that Dr. Chunchu recorded "mostly benign results except for
6  fatigue." Tr. 25. However, Dr. Chunchu was specifically addressing chronic fatigue syndrome
7  and a normal musculoskeletal examination does not contradict an allegation of chronic and
8  debilitating fatigue.
9        The ALJ also stated, "Dr. Chunchu specifically wrote that 'in her current state [the
10 claimant] is able to be functional in the workplace." Tr. 25. The entirety of Dr. Chunchu's
11 statement, however, reflects that this is likely a typographical error and Dr. Chunchu meant to
12 state "is *not* able to be functional." The treatment note cited by the ALJ reads, in its entirety,
13 "D/w pt and mother that I will complete her current paperwork. Given her sx, agree in her
14 current state she is able to be functional in the workplace." Tr. 1006. However, as noted by
15 Plaintiff, the "paperwork" Dr. Chunchu is referring to is the October 2018 RFC statement, in
16 which Dr. Chunchu concluded that Plaintiff is "currently *not* able to work based on fatigue." Tr.
17 1011 (emphasis added). Defendant argues that it was up to the ALJ to interpret the evidence and
18 that she did so in a reasonable manner. However, it was not a reasonable interpretation because it
19 was at odds with Dr. Chunchu's findings on the RFC form that Plaintiff's symptoms would
20 constantly interfere with attention and concentration needed to perform even simple work tasks
21 and that she was incapable of performing even a "low stress" job. Tr. 1010.
22       The ALJ also reiterates her findings that the Plaintiff's self-reported activities undermine
23 Dr. Chunchu's opinion. Tr. 25. However as discussed, Plaintiff's ability to engage in these

activities on a sporadic basis is not inconsistent with Dr. Chunchu's opinion concluding that Plaintiff was "[c]urrently not able to work based on fatique" and that on average, Plaintiff would likely be absent from work more than four days per month. Tr. 1011-1012.

Based on the foregoing, the Court finds that the ALJ did not give legally sufficient reasons for rejecting Dr. Chunchu's opinion, particularly in light of the vocational expert's opinion regarding absenteeism.

(3) <u>Margaret Cunningham, Ph.D.</u>

In July 2017, Dr. Margaret Cunningham completed a psychological evaluation of Plaintiff. Tr. 584. The examination included a mental status examination and testing (the BDI-II and the BAI). Dr. Cunningham opined that Plaintiff had marked limitations in ability to function in the following areas: understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal work day and week without interruption from psychologically based symptoms; and set realistic goals and plan independently. Tr. 597.

The ALJ gave this opinion "little weight" because Dr Cunningham did not review Plaintiff's medical records and instead, relied on Plaintiff's self-reports; and because her opinions were contrary to Plaintiff's self-reported activities and Dr. Chunchu's clinic entry that Plaintiff is able to be functional in the workplace. Tr. 25. The import of Plaintiff's self-reported activities and that of Dr. Chunchu's clinic entry have previously been discussed. In short, Plaintiff's occasional participation in sedentary activities is not contrary to Dr. Cunningham's opinion that Plaintiff would have marked limitations in the ability to complete a normal workday or contrary to Dr. Chunchu's opinion that Plaintiff's symptoms would constantly interfere with

the attention and concentration needed to perform even simple work tasks and that she was incapable of performing even a "low stress" job.

The ALJ also discredited Dr. Cunningham's opinion because she "did not indicate that she had reviewed any of the claimant's medical records, but instead had relied on the claimant's self-report." Tr. 25. An ALJ may reject a psychiatric opinion that relies "to a large extent" on a claimant's subjective report, rather than on objective measures such as clinical observations and mental status examinations. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Here, the record reflects that Dr. Cunningham did not rely solely on Plaintiff's self-reports, but also a clinical interview, testing including the BAI and BDI-II, and a Mental Status Examination. Tr. 584-593. Dr. Cunningham concluded that Plaintiff's score on the BAI revealed a severe range of generalized anxiety and her scote on the BDI-II revealed a severe range of major depression. Tr. 589. Although Dr. Cunningham noted that the BDI-II is a "self-report instrument" she also noted that she routinely reads the items to her clients and explains terminology they may not understand. *Id.*

Based on the foregoing, the Court finds that the ALJ did not give legally sufficient reasons for rejecting Dr. Cunningham's opinions.

(4)     Dr. Merry Alto, MD

The ALJ gave "significant weight" to state-agency consultant Dr. Merry Alto as being "consistent with the totality of medical records, including Plaintiff's self-reported activities and consistency of evidence on record." Tr. 26.

At reconsideration, Dr. Merry Alto opined that Plaintiff had the residual functional capacity to lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk (with normal breaks) for a total of two hours, and sit (with normal breaks) for a total of about six hours in an

1  eight-hour workday. Tr. 116. However, Dr. Alto also concluded that "[c]hronic fatigue and

2  abdominal pain would cause occasional absences." Tr. 117.

3  The Social Security Regulations defines "occasional" as "occurring from very little up to

4  one-third of the time." SSR 83-10, SSR 83-14, SSR 96-9p. The ALJ does not explain why this

5  portion of the opinion was rejected or why she included no limitation regarding absenteeism in

6  Plaintiff's RFC. This was error as the vocational expert testified at the hearing that an individual

7  who missed "one day of work per month or more at unpredictable times is not likely to maintain

8  employment." Tr. 61. The ALJ also stated that "Dr. Alto rated the claimant's RFC at 'light,'

9  which has been adopted in this decision." Tr. 25. However, Dr. Alto concluded that Plaintiff has

10  the ability to perform sedentary work. Tr. 120.

11  Based on the foregoing, the Court finds that the ALJ erred in failing to consider the

12  limitations of absenteeism and sedentary work in Plaintiff's proposed RFC and absenteeism.

13  B.     Plaintiff's Symptom Report

14  Absent evidence of malingering, the Commissioner must provide "clear and convincing"

15  reasons for rejecting a claimant's testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

16  1998), citing *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). "General findings are

17  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

18  undermines the claimant's complaints." *Reddick*, 157 F.3d at 722, quoting *Lester*, 81 F.3d at 834;

19  *Dodril v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

20  At the outset, Defendant argues generally that the ALJ appropriately discounted

21  Plaintiff's subjective complaints due to the lack of medical evidence covering the first sixteen

22  years of Plaintiff's life. Dkt. 15 at 3. In this regard, the ALJ stated only, "[e]ven though the

23  claimant is alleging disability since birth, the evidence of records contains medical documents

ORDER REVERSING THE COMMISSIONER AND REMANDING - 11

1   from 2017 onwards." (Tr. 23). The ALJ made no further findings and did not specifically state

2   how this detracts from Plaintiff's credibility or other medical evidence. In addition, records prior

3   to age 18 are not relevant to the current Childhood Disability Benefits (CDB) claim and DDS did

4   not obtain records prior to June 23, 2016 (Plaintiff's 18th birthday). Tr. 69; *See Moore v.*

5   *Commissioner*, 278 F.3d 920, 925 (9th Cir. 2002) *quoting* 42 U.S.C. § 402(d)(1)(B)(ii) (To be

6   eligible for disabled child's benefits, the claimant must "at the time [the] application [is] filed"

7   be "under a disability.")

8          The ALJ concluded that, "[d]espite the allegation of functional impairments at a disabling

9   degree, [plaintiff] is engaging in age-appropriate activities that relect an ability to perform her

10  RFC despite some limitations." Tr. 23. First, the ALJ noted that Plaintiff was able to babysit for

11  10 hours at a time. As previously discussed, this was error.

12         Next, the ALJ discredits Plaintiff's testimony because Plaintiff engages in "age-

13  appropriate activities" such as playing video games, watching television, watching YouTube

14  videos, singing, and reading. Tr. 24. The ALJ does not mention Plaintiff's testimony that she

15  would "mostly sleep," but if she had the concentration, she would watch television or YouTube

16  videos and occasionally play a video game. Tr. 39-41. The ALJ also does not explain how

17  Plaintiff's engagement in these sedentary activities translates to full-time and competitive work.

18         At the hearing, the ALJ asked, "Do you participate on Facebook?" and Plaintiff

19  responded, "I do, yes." Tr. 41. From this testimony alone, the ALJ concludes that Plaintiff's use

20  of Facebook indicates a level of computer skills and concentration sufficient for staying

21  connected with others." Tr. 24. It was error for the ALJ to make this assumption as there is no

22  evidence for how often or long Plaintiff uses her computer for Facebook, whether she has help

23  using the computer, or the amount of people with whom she stays connected.

Next, the ALJ points to Plaintiff's mother's statement that Plaintiff "gets together with extended family once every two months, and that she can follow both spoken and written instructions 'very well' with 'no problems.'" Tr. 24. The ALJ does not however, refer to Plaintiff's mother statement that Plaintiff can only work on completing tasks for about five minutes at a time. Tr. 245. Moreover, the ability to see family members once every two months is not inconsistent with Plaintiff's allgations of chronic and unpredictable fatigue that prevents her from sustaining any activity on a full-time basis and the need for long periods of recovery after expending energy. Tr. 261, 262. Here, the ALJ erred by using only specially selected statements from the third-party ADLs to "further reinforce the RFC as found," while ignoring the remainder of the form that remains supportive of Plaintiff's allegations. Tr. 24.

As "additional support" for the ALJs decision, Defendant cites to medical visits in 2014 and 2015 to suggest that Plaintiff's fatique can be explained by Plaintiff's participation in on-screen activities. Dkt. 15 at 4-5. However, these visits were not referenced or relied on by the ALJ and are technically outside the relevant time period (age 18 to 22 years). The August 2014 visit also indicates that Plaintiff has an irregular sleep schedule and "she awakens at various times in the morning and is napping several days of the week." Tr. 349. The October 2015 visit documented Plaintiff with a flat affect, reporting chronic pain and fatigue. Tr. 426.

As further "additional support" for the ALJ's conclusions, Defendant cites a January 2016 physical therapy visit documenting that Plaintiff was independent in self-care activities and activities of daily living (Dkt. 15 at 5) but that same visit documented that Plaintiff requires "increased time to complete daily activities to the point of only completing activities 2-3 times per week" and Plaintiff reportedly would "sit/lie down for most of the day in bouts for 4-5 hours." Tr. 431. Defendant also cites a June 2016 note finding that Plaintiff continued to perform

her daily chores. Dkt. 15 at 5. This visit was a follow up on her "chronic fatigue and pain which have limited her physical activity and general functioning." Tr. 330.

Defendant also cites several examples within the record to suggest that Plaintiff's "disordered sleeping" patterns and a "random sleep schedule" may be attributed to the amount of time Plaintiff spends on her computer and phone. Dkt. 15 at 5-6. The ALJ did not reference or rely on these examples, except as to Dr. Thordarson's note that Plaintiff's "sleep was still irregular and the claimant uses her phone at night and then feels fatigued during the day (8F/14)." But the ALJ also acknowleged that Dr. Thordarson attributed Plaintiff's fatigue and mood to disorganized sleep. Tr. 24.

Because the ALJ did not mention or conclude that Plaintiff's computer use undermined her claim of fatigue or disorganized sleep, Defendant's suggestion is merely a post-hoc rationalization for the ALJ's decision. *See Connet v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")

For these reasons, the Court finds that the ALJ erred in her assessment of Plaintiff's testimony and that the errors undermine the ALJ's RFC findings.

C.      New Evidence Submitted to the Appeals Council

Plaintiff submitted two post-hearing statements to the Appeals Council in support of her claim: (1) a statement from Compass Health, documenting the number of missed appointments Plaintiff had between May 2018 up through April 2019, as evidence of Plaintiff's excessive absenteeism (Tr. 9) and, (2) a statement from Becky Murdoch, the family friend for whom Plaintiff occasionally babysat, as proof of the duration and frequency of Plaintiff's babysitting activities (Tr. 8). The Appeals Council found "this evidence does not show a reasonable

probability that it would change the outcome of the decision. We did not exhibit this evidence." Tr. 2.

A district court may remand a case to the Commissioner for consideration of new, material evidence. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Evidence is material "only where there is a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before him." *Booz v. Sec'y of Health and Human Servs.*, 735 F.2d 1378, 1380 (9th Cir. 1984) (quotation marks and citation omitted); see also 42 U.S.C. § 405(g).

Because the Court is reversing and remanding the ALJ's decision for the reasons set forth herein, the new evidence may be considered by the ALJ in the first instance on remand.

## CONCLUSION

As discussed above, the ALJ harmfully erred in finding plaintiff not disabled. Plaintiff contends the Court should remand the case for an award of benefits. Remand for an award of benefits should be ordered only in the rare case in which the record is susceptible to no further development and no reasonable jurist would disagree that the claimant is disabled. This is not such as rare case as the opinions of numerous doctors and the testimony of plaintiff must be reassessed and reweighed. These are tasks reserved to the Commissioner and the Court declines to take these tasks on appeal in the first instance. Accordingly, the Court orders that the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reassess Plaintiff's testimony, reassess the opinions of Drs. Thordarson, Chunchu, Cunningham, and Alto, develop the record and redetermine Plaintiff's

RFC as needed and proceed to the remaining steps of the disability determination process as appropriate.

DATED this 17th day of June, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER AND REMANDING - 16